UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BROADCAST MUSIC, INC., et al., | ) |
| | ) |
| Plaintiffs, | )   No. 4:19-cv-40136-DHH |
| v. | ) |
| | ) |
| 11 EXCHANGE STREET LLC | ) |
| d/b/a THE STEEL PUB, et al.,, | ) |
| | ) |
| Defendants. | ) |

**REPORT AND RECOMMENDATION**
October 13, 2020

Hennessy, M.J.

This matter comes before the Court on Plaintiffs Broadcast Music, Inc., Coral Reefer Music, EMI Blackwood Music, Inc., Songs of Universal, Inc., Contessa Publishing LLC, Sony/ATV Songs LLC, and Beanly Inc.'s (collectively, "Plaintiffs") motion for default judgment and assessment of damages. (Docket #11). No response has been filed, and the time to plead or otherwise defend has lapsed. The matter is now ripe for adjudication. For the following reasons, the undersigned directs the clerk to reassign this matter to a district judge, and RECOMMENDS that the Plaintiffs' motion be DENIED with respect to injunctive relief, and ALLOWED in all other respects.

I.   BACKGROUND[1]

Plaintiff Broadcast Music, Inc. ("BMI") is a Delaware corporation with its principal place of business in New York. (Docket #1 at ¶ 3). BMI has the authority to license public performance rights for fifteen-million copyrighted musical compositions (the "BMI Repertoire"), including those at issue in this case. (Id.). The remaining Plaintiffs own the copyrights in the musical compositions at issue here. (Id. at ¶ 4). Defendant 11 Exchange Street LLC is a Massachusetts limited liability company which operates The Steel Pub, located at 11 Exchange Street, in Athol, Massachusetts (the "Establishment"). (Id. at ¶ 11). In connection with the operation of the Establishment, 11 Exchange Street LLC publicly performs musical compositions and/or causes musical compositions to be publicly performed. (Id. at ¶ 12). Defendant Hartin is the manager of 11 Exchange Street.[2] (Id. at ¶ 14).

From November 2016 through October 2019, BMI contacted Defendants over twenty times by phone, mail, and email to inform them that the Copyright Act requires that they purchase a license for public performance in order to play music from the BMI Repertoire. (Id. at ¶ 17). Included in the letters were cease and desist notices demanding that Defendants immediately cease all use of BMI's licensed music in the Establishment. (Id.). On March 28, 2019, a BMI representative visited the Establishment where he recorded songs from the BMI Repertoire being performed. (Docket #13 at ¶¶ 9-11). BMI produced a Certified Infringement Report and Performance Identification Declaration which verified the songs on the recording including Jimmy

---

[1] Because Defendants have defaulted for failure to plead or otherwise defend, they are "taken to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability as to which damages will be calculated." Ortiz-Gonzalez v. Fonovisa, 277 F.3d 59, 62-63 (1st Cir. 2002) (quoting Franco v. Selective Ins. Co., 184 F.3d 4, 9 n.3 (1st Cir. 1999)).

[2] Hartin is not an infant, incompetent, or in the military service of the United States. (Docket #12 at ¶ 6).

Buffet's "Cheeseburger In Paradise," Chumbawamba's "Tubthumping," Jesse Hill's "Don't Know Why," and Vanessa Carlton's "A Thousand Miles."  (Docket #1-3; Docket #13-2).

Based on this investigation, on October 23, 2019, Plaintiffs filed suit in this court alleging four claims of willful copyright infringement.  (Docket #1 at ¶ 18).  Plaintiffs claim that Defendants' conduct has continued to cause them "great and incalculable damage."  (Id. at ¶ 24).  Accordingly, Plaintiffs seek statutory damages under 17 U.S.C. § 504(c) and attorney's fees and costs pursuant to 17 U.S.C. § 505.  (Id. at 6).  Additionally, Plaintiffs seek an injunction restraining Defendants from "infringing, in any manner, the copyrighted musical compositions licensed by BMI, pursuant to 17 U.S.C. § 502."  (Id.).

Plaintiffs served Defendants on October 29, 2020.  (Dockets #6, 7).  Defendants failed to file an answer.  At Plaintiff's request, (Docket #8), the clerk entered a default on the docket against Defendants on December 26, 2019, (Docket #9).  On January 24, 2020, Plaintiffs filed the instant motion with supporting affidavits.[3]  (Dockets #11, 12, 13, 14).

## II. ANALYSIS

Prior to entering default judgment, the court may examine the complaint, taking all well-pleaded factual allegations as true, to determine its legal sufficiency.  Ramos-Falcon v. Autoridad de Energia Electrica, 301 F.3d 1, 2 (1st Cir. 2002).  Once liability is determined, the court must assess damages by considering the type and amount of damages to be awarded.

### A. Liability

The Copyright Act of 1976 gives a copyright owner the exclusive right to publicly perform, or authorize others to publicly perform, the copyrighted work.  17 U.S.C. § 106(4).  To establish a case of copyright infringement, "a plaintiff must demonstrate (1) originality and authorship of the

---

[3] On August 27, 2020, in response to an order of the court, Plaintiffs filed under seal the second declaration of their attorney, William Strong, which included an itemized billing statement.  (Docket #17).

work involved; (2) compliance with all formalities required to secure a copyright under the Act; (3) plaintiff's ownership of the copyright in question; (4) public performance of the work; and (5) lack of authorization for the performer to perform the work." Polygram Int'l Pub., Inc. v. Nevada/TIG, Inc., 855 F. Supp. 1314, 1320 (D. Mass. 1994).

Because Defendants have defaulted for failure to plead or otherwise defend, the facts alleged in the pleadings are assumed to be true, and, in any event, are amply corroborated by plaintiffs' affidavits. See Ortiz-Gonzalez, 277 F.3d at 62-63. The first four elements of a copyright infringement claim are demonstrated by the uncontested facts in Plaintiff's complaint and the submitted affidavits which indicate the writer, publisher, and copyright registration numbers for each of the four works at issue as well as the date and location of the infringement. (Docket #1-3; Docket #13 at ¶¶ 9-11; Docket #13-2).[4] Regarding the fifth element, Plaintiffs have shown that they never granted Defendants a license authorizing the performance of any the works at issue and that none of the owners of the copyrights of any of these works has issued any such license. (Docket #13 at ¶ 15). As Plaintiffs have established all five elements, the Court finds that Defendants engaged in copyright infringement.[5]

Plaintiffs assert that Defendants' infringement was willful. (Docket #1 at ¶ 18). An infringement is willful when a "defendant had knowledge that his actions constituted copyright infringement or acted with reckless disregard for the copyright holder's rights." Sony BMG Music Entm't v. Tenenbaum, 660 F.3d 487, 507 (1st Cir. 2011). Courts have found willful infringement where a defendant refuses to obtain a license for public performance of songs despite repeated

---

[4] The year of infringement of the copyrighted work "Tubthumping," 2018, is treated as a typographical error for the actual year, 2019. (See Docket #1-3).

[5] As the manager of The Steel Pub, Hartin, who had the right and ability to supervise the infringing activity and a direct financial interest in such activities, is jointly and severally liable to Plaintiffs. See Broadcast Music, Inc. v. Old Colonial Corp., No. 00-CV-12458-GAO, 2002 U.S. Dist. LEXIS 1464, at *5 (D. Mass. Jan. 29, 2002).

warnings that a failure to do so creates the risk of copyright infringement. See, e.g., Broadcast Music, Inc. v. C.B.G., Inc., No. 11-cv-40142-FDS, 2013 WL 6074121, at *4 (D. Mass. Nov. 15, 2014) ("It is clear that Defendants willfully infringed by continually refusing to obtain a license despite BMI's many calls and letters warning about the risk of infringement and offering to enter into a licensing agreement with Defendants."); Broad. Music, Inc. v. McDade & Sons, Inc., 928 F. Supp. 2d 1120, 1134 (D. Ariz. 2013) ("The record reflects that Defendants' infringements were knowing and willful. . . . [Plaintiff] repeatedly notified Defendants of the need to enter into a blanket license agreement, but Defendants declined to do so."); Emi Mills Music, Inc. v. Empress Hotel, Inc., 470 F. Supp. 2d 67, 73 (D.P.R. 2006) (finding infringement "deliberate and willful" where defendants did not obtain a license for performance of music at their hotel despite repeated contact from plaintiff about necessity of license). In the instant case, Plaintiffs contacted Defendants over twenty times by phone, mail, and email to explain the infringement and requirement to get a blanket license. (Docket #13 at ¶¶ 4-5, 7-8). The undersigned finds that Defendants willfully infringed by refusing to obtain a license in spite of these numerous communications and will recommend that damages be awarded accordingly.

B.    Computation of Damages

Having found that Plaintiffs properly stated a claim of copyright infringement, the undersigned must now compute the appropriate amount of damages to award Plaintiffs. Plaintiffs seek statutory damages under 17 U.S.C. § 504(c), attorney's fees and costs under 17 U.S.C. § 505, and an injunction under 17 U.S.C. § 502. (Docket #24 at 6).

  1. Statutory Damages

A copyright infringer is liable for either (1) the copyright owner's actual damages and any additional profits of the infringer; or (2) statutory damages. 17 U.S.C. § 504(a). Here, Plaintiffs

have elected to recover, instead of actual damages and profits, an award of statutory damages. (Docket #1 at 6).

Under the Copyright Act, a copyright owner may recover "an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). In cases of willful infringement, the maximum statutory award increases to $150,000. Id. § 504(c)(2). The determination of statutory damages under 17 U.S.C. § 504(c) is left to the discretion of the trial court. Morley Music Co. v. Dick Stacey's Plaza Motel, Inc., 725 F.2d 1, 3 (1st Cir. 1983). Among the factors the court may consider when determining damages are "(1) expenses saved and profits reaped by the defendant, (2) revenues lost by the plaintiffs, (3) the deterrent value of the award, and (4) whether the infringement was willful or innocent." Polygram Int'l Publishing, Inc., 855 F. Supp. at 1335.

For the four acts of infringement described in the Complaint, Plaintiffs request an award of $7,500 per violation, for a total award of $30,000. (Docket #15 at 3). Had Defendants paid Plaintiffs licensing fees from November 2016 through October 2019, when this suit was filed, it would have amounted to $7,434. (Docket #13 at ¶ 16). Thus, Plaintiffs request approximately four times the amount they would have received in licensing fees from Defendants had the Establishment been properly licensed. (Docket #15 at 3).

The undersigned finds that Plaintiffs' suggested award is overly punitive. Instead, the undersigned recommends that the court find that a total award of $15,000 is an appropriate amount for statutory damages in this case, representing $3,750 per violation and twice the sum that Plaintiffs would have received from Defendants in licensing fees had they been properly licensed

from November 2016 through October 2019.  The undersigned finds that this amount will be sufficient to address Defendants' proven wrongful acts as well as deter would-be infringers.  See Broadcast Music, Inc. v. PJML, Inc., No. 13-cv-12212-IT, 2015 WL 5737140, at *4 n.5 (D. Mass. Sept. 30, 2015) (finding that award of statutory damages and attorneys' fees and costs that more than doubled the applicable licensing fee achieved appropriate deterrence of would-be infringers).  The undersigned notes that, although the facts of this case suggest that, beginning at least as early as 2016, the Establishment offered live music without first purchasing a license from BMI, the evidence only affirms one night of infringement regarding four songs.  (Docket #13 at ¶¶ 9-11).

2.  Attorney's Fees

Pursuant to 17 U.S.C. § 505, Plaintiff seeks $3,212 in attorney fees.  (Docket #15 at 4).  Under the Copyright Act, "the court may . . . award a reasonable attorney's fee to the prevailing party."  17 U.S.C. § 505.

The First Circuit follows "the 'lodestar' approach, which calculates reasonable attorneys' fees as 'the number of hours reasonably expended multiplied by a reasonable hourly rate.'"  Comcast of Mass. I, Inc. v. Naranjo, 303 F. Supp. 2d 43, 50 (D. Mass. 2004) (quoting Furtado v. Bishop, 635 F.2d 915, 920 (1st Cir. 1980)).  "To determine the number of hours reasonably spent, one must first determine the number of hours actually spent and then subtract from that figure hours which were duplicative, unproductive, excessive, or otherwise unnecessary."  Grendel's Den, Inc. v. Larkin, 749 F.2d 945, 950 (1st Cir. 1984).  A reasonable hourly rate is calculated by considering "such factors as the type of work performed, who performed it, the expertise that it required, and when it was undertaken."  Id. at 950-51.  "Once the basic lodestar figure is calculated, the court must consider whether an upward or downward adjustment should be made 'to reflect the contingent nature of any fee (if such is not reflected in the hourly rate), delay in payment,

quality of representation (i.e., an unusually good or poor performance above or below the skill already reflected in the hourly rates), exceptional (and unexpected) results obtained, etc.'" Id. at 951 (quoting Furtado, 635 F.2d at 920).

Attorney Strong states that he charged Plaintiffs $440 per hour, which he maintains is less than his usual rate because of his ongoing client relationship with Broadcast. (Docket #14 at ¶ 2). He represents that the average rate for representation in a copyright claim is around $700 per hour. (Id.). Attorney Strong has been a member of his firm since 1982 and his practice has been principally in the field of copyright law. (Id. at ¶ 1). Attorney Strong expended 7.3 hours on this matter. (Docket #17 at 5). As Defendants have provided no evidence that the rate charged by Plaintiffs' attorney is unreasonable, the undersigned will allow the hourly rate of $440. Broadcast Music, Inc. v. C.B.G., Inc., No. 11-CV-40142-FDS, 2014 WL 4656879, at *6 (D. Mass. Sept. 12, 2014) (allowing counsel's requested hourly rate of $400); see also PJML, Inc., 2015 WL 5737140, at *4 (allowing counsel's requested hourly rate of $400). Here, Plaintiffs properly did not spend any excess time on discovery where default judgment was pending; therefore, finding that Attorney Strong's 7.3 hours spent on the complaint, motion, and three affidavits was reasonable, the court will not eliminate any excess hours. See id. Thus, the undersigned finds the lodestar amount in this case is $3,212. The undersigned does not believe that any adjustment of the lodestar amount is necessary.

3. Costs

Under the Copyright Act a court may, in its discretion, grant an award of full costs to a prevailing party. 17 U.S.C. § 505. Plaintiffs request $547 in costs, primarily for filing fees and process-server fees. (Docket #14 at ¶ 4). The undersigned finds this amount reasonable and recommends that the court award Plaintiffs $547.58 in costs.

4. Injunction

Injunctive relief may be awarded "where (1) the plaintiff has prevailed on the merits, (2) the plaintiff would suffer irreparable injury in the absence of injunctive relief, (3) the harm to the plaintiff would outweigh the harm to the defendants from an injunction, and (4) the injunction would not adversely affect the public interest." Joyce v. Town of Dennis, 720 F.3d 12, 25 (1st Cir. 2013). "To be entitled to a forward-looking remedy, a plaintiff must satisfy the basic requisites of equitable relief – 'the likelihood of substantial and immediate irreparable injury, and the inadequacy of remedies at law.'" Steir v. Girl Scouts of the USA, 383 F.3d 7, 16 (1st Cir. 2004) (quoting O'Shea v. Littleton, 414 U.S. 488, 502 (1974)). This requires a showing "either that some past unlawful conduct has continuing impact . . . or else . . . a likelihood of future unlawful conduct on the defendant's part." Lopez v. Garriga, 917 F.2d 63, 67 (1st Cir. 1990) (internal citations omitted).

I focus on the issue of future infringement because it is dispositive. In both Broadcast Music, Inc. v. Tommy Doyles Hyannis, LLC, No. 13-cv-12258-IT, 2015 WL 3649682 (D. Mass. June 10, 2015), and Broadcast Music, Inc. v. PJML, Inc., 2015 WL 5737140, BMI prevailed on the merits in nearly identical cases of public performance of songs from the BMI Repertoire. In Tommy Doyles Hyannis, the court refused to enter a permanent injunction where the "Plaintiffs' complaint d[id] not plead that Defendants continue to infringe the musical works at issue or that they are likely to infringe those works again in the future." Tommy Doyles Hyannis, 2015 WL 3649682, at *3. Similarly, in PJML, the court refused to enjoin the defendants, where plaintiffs pled that live music continued to be performed at the defendant's establishment, but nothing in the record indicated "that these live performances [were] of musical works for which a license from Broadcast Music is required to perform publicly." PJML, 2015 WL 5737140, at *5.

Like the plaintiffs in Tommy Doyles Hyannis and PJML, Plaintiffs fail to sufficiently demonstrate why an injunction is necessary here. Nowhere in the memorandum in support of default judgment, nor in the complaint, do Plaintiffs plead facts to support ongoing infringement. The only sentence which makes reference to future infringement reads, "[b]y continuing to provide unauthorized public performances of works in the BMI Repertoire at the Establishment, Defendants threaten to continue committing copyright infringement." (Docket #1 at ¶ 24). There is no evidence in the record to support this allegation. See PJML, Inc., 2015 WL 5737140, at *5. Without such evidence, injunctive relief is inappropriate.

III. CONCLUSION

For the foregoing reasons, the Court hereby directs the Clerk to reassign this matter to a district judge and RECOMMENDS that the Plaintiff's motion for default (Docket #11) be DENIED as to the request for injunctive relief and ALLOWED in all other respects and that a default judgment in the amount of $15,000 in statutory damages, $3,212 in attorney's fees, and $547.58 in costs, for a total of $18,759.80 be entered.[6]

/s/ David H. Hennessy
David H. Hennessy
UNITED STATES MAGISTRATE JUDGE

---

[6] The parties are hereby advised that, under the provisions of Fed. R. Civ. P. 72, any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objections are made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Emiliano Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-05 (1st Cir. 1980); see also Thomas v. Arn, 474 U.S. 140 (1985).